**FOODWAY, INC., et al., Appellants,**

v.

**Mary Helen AGUIRRE, Appellee.**

**No. 15779.**

Court of Civil Appeals of Texas, San Antonio.

April 13, 1977.

Rehearing Denied May 11, 1977.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellants.

David R. White, Jr., White & White, Uvalde, for appellee.

BARROW, Chief Justice.

This is a venue action involving Subd. 9a, Art. 1995, Tex.Rev.Civ.Stat.Ann. (1964).[1] Appellee brought this suit to recover damages for personal injuries sustained when she slipped and fell while shopping in a grocery store owned and operated by appellants in Del Rio. Appellants, Foodway, Inc. and Kimbell, Inc., are residents of Tarrant County and have perfected their appeal from an order entered after a non-jury trial overruling their pleas of privilege.

Appellee, hereinafter referred to as plaintiff, was an invitee in defendants' store at the time of the accident. In *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972), the Supreme Court stated that the duty which an occupier of premises owes to an invitee is that which is summarized in Restatement (Second) of Torts § 343 (1965):

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The occupier is under the further duty to exercise reasonable care in inspecting the premises to discover any latent defects and to make safe any defects or to give an adequate warning. Restatement (Second) of Torts § 343, Comment b (1965).

There is no evidence that defendants created the condition which caused plaintiff's fall or that defendants knew of the condition prior thereto. The crucial question in this case is whether there is sufficient evidence to support the trial court's conclusion that defendants breached the duty owed to plaintiff in that bottle caps had been on the floor for such a period that they should have been discovered and removed by defendants' employees in the exercise of ordinary care before the accident occurred.

Only two witnesses testified. Plaintiff testified that she had been shopping in the store about 20–30 minutes before her fall. After she walked by the produce department, she slipped and fell on the floor. While in a sitting position on the floor, she saw that she had slipped on a soft drink bottle cap and that there were six or seven more bottle caps on the floor near where she fell. The store manager came over and she handed him the bottle cap. She believes that he saw the other bottle caps in that he sent for a sack boy to sweep the area. The bottle caps were in the area of the soft drink machines. She did not see any bottle caps on the floor prior to her fall

1. The venue facts are: (1) that an act or omission of negligence occurred in Val Verde County; (2) that such act or omission was that of the defendants or their servant, agent, or representative acting within the scope of his employment; and (3) that such negligence was a proximate cause of the plaintiff's injuries. 1 McDonald, Texas Civil Practice § 4.17.2 (1965).

although she had walked down this aisle about twenty minutes prior to her fall.

The former store manager, Carlos Almeda, was called as an adverse witness by plaintiff although he is no longer employed by defendants. He testified that the floor was swept each morning shortly after the store was opened. Thereafter the floor was cleaned whenever any employee spotted something that needed cleaning. No employee was specifically charged with this cleaning detail, but all, including himself, were charged with keeping the floor clean. The manager first learned of the accident when plaintiff called to him as he was walking down the aisle toward where she was leaning against the produce rack. She told him that she had fallen after stepping on a Coca Cola cap. His testimony was very inconclusive regarding the presence of the bottle caps. Although he had walked down this aisle about twenty minutes before the accident, he did not see any bottle caps on the floor. He testified he did not remember plaintiff giving him the bottle cap and he did not remember calling an employee to clean up the area. He did not deny that those things had occurred or that the bottle caps were on the floor.

The trial court found that there were six or seven bottle caps lying on the floor near where plaintiff fell which was about ten feet from two vending machines that dispensed beverages with bottle caps. The court also found that the store manager had walked down this aisle about twenty minutes before plaintiff fell and, although he did not see any bottle caps, the manager had testified that it was possible that they were on the floor at this time. The trial court concluded that since there were at least six or seven other bottle caps on the floor immediately after plaintiff fell, the condition existed for a long enough time for the defendants' employees to have seen or known of the condition in the exercise of normal or ordinary care and cleaned up the area. Furthermore, the store manager had been in this area shortly before the accident occurred and should have seen the bottle caps if they were there.

These conclusions are based on the premise that the bottle caps came from the vending machines over some period of time. It cannot be seriously doubted that the bottle caps came from the vending machines; the uncertainty is over how they got to the floor and over what period of time. The appearance or condition of the bottle caps would not answer these questions. Cf. *Furr's Supermarkets, Inc. v. Arellano*, 492 S.W.2d 727 (Tex.Civ.App.—El Paso 1973, writ ref'd n. r. e.). The accident occurred near the end of a summer day and it would be reasonable to presume that many drinks would have been sold during the day. There is no evidence that the condition of the bottle cap holder was checked by defendants before or after the accident to determine if it was overflowing.

The only explanation for the caps being on the floor that is suggested by defendants is that perhaps a child removed them from the holder and scattered them on the floor. However, there is no evidence that a child was in the vicinity before the accident.

Here there is no direct evidence of how or when the bottle caps got on the floor. However, the trial court did not abuse its discretion in drawing the inference from the facts before it that the caps came singly from the vending machine as the bottles were opened. Since there were six or seven on the floor, it was reasonable to conclude that they had been on the floor for some time. The bottle caps were on the floor in a main aisle of the store at a very busy shopping period. We conclude that there is sufficient evidence to support the trial court's conclusion that the defendants were negligent in not discovering and removing the bottle caps from the floor before plaintiff slipped on one of the caps. Thus, the trial court did not err in overruling defendants' plea of privilege.

The judgment is affirmed.