# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 19, 2023

Lyle W. Cayce
Clerk

No. 21-40609

Rudolph O'Connor,

*Plaintiff—Appellant*,

*versus*

Wal-Mart Stores Texas, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:20-CV-149

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.
Per Curiam:[*]

In this slip-and-fall case governed by Texas premises-liability law, plaintiff Rudolph O'Connor appeals the district court's grant of summary judgment to defendant Wal-Mart Stores Texas, L.L.C. For the following reasons, we reverse the district court and remand for further proceedings.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

**I.**

On May 10, 2019, O'Connor was exiting a Wal-Mart store in LaMarque, Texas, when he slipped and fell on a "green, slimy substance," —later identified by O'Connor's expert as algae—that covered a portion of the cement sidewalk in front of the store's garden center. He sustained neck injuries necessitating a disc replacement surgery.

The store manager, Jesse Hale, stated in his deposition that the water from watering activity in the garden center drains out of the garden center and onto the sidewalk in front of it. Despite this, Hale stated that he does not check to see if the water is accumulating on the sidewalk outside of the garden center; instead, he only drives around the building—usually in the dark. Neither Hale nor any other staff member conducts a routine inspection of the sidewalk in question. Hale also stated that Wal-Mart is responsible for the sidewalk condition, and noted that the area does not drain properly, which results in pooling water.

O'Connor's expert witness, Dr. Jahan Rasty, a mechanical and forensic engineer, noted in his affidavit that green algae was present on the sidewalk and extended into the garden area, and he concluded such a condition indicated that the water was coming from the garden center. Further, he noted that although "natural rainfall water" also accumulated on the sidewalk, "the fact that the algae growth extended into that area tells me that – on algae growth – was affected by the water coming from that area." Dr. Rasty analyzed photographs taken both at the time of O'Connor's fall and nearly two years later and found them to show green algae staining on the concrete as well as water retention in that area. He also noted that "it takes many days of continuous moisture . . . for significant levels of algae to accumulate."

O'Connor filed suit in the district court of Galveston County, Texas, asserting both negligent activity[1] and premises liability claims. Wal-Mart removed the case to the United States District Court for the Southern District of Texas on diversity-of-citizenship grounds. Subsequently, Wal-Mart moved for summary judgment, arguing that O'Connor (1) failed to present evidence "that the green slime/mold is an unreasonably dangerous condition[,]" and (2) failed to present evidence of Walmart's actual or constructive notice of any unreasonably dangerous condition. The district court granted summary judgment in favor of Wal-Mart, holding that O'Connor failed to create a genuine issue of material fact that the "slime" in which he slipped was not a "natural" accumulation, for which there can be no premises liability under Texas tort law. It did not address Wal-Mart's alternate argument that O'Connor failed to create a genuine issue of material fact as to whether Wal-Mart had actual or constructive knowledge of the dangerous condition. O'Connor now appeals to this court.

## II.

This court reviews a district court's decision to grant summary judgment de novo, using the same standard as prescribed for the district court to apply in deciding the motion. *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In resolving the motion, the court may not undertake to evaluate or weigh the evidence or resolve

---

[1] O'Connor does not challenge the district court's summary judgment dismissal of his negligent activity claim, so we address only the premises liability claim here.

factual disputes; so long as the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the nonmoving party, could arrive at a verdict in that party's favor, the court must deny the motion. *Int'l Shortstop v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III.

Under Texas law, a premises owner "has a duty to exercise reasonable care to make the premises safe for invitees." *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 202 (Tex. 2015). To prevail on a premises-liability claim, a plaintiff must prove four elements: "(1) Actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) That the condition posed an unreasonable risk of harm; (3) That the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) That the owner or occupier's failure to use such care proximately caused the plaintiff's injury." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). This appeal involves the first two elements: the actual or constructive knowledge of a condition on the premises by the owner or occupier, and the risk of harm posed by the condition. We address each below, starting with the second.

### A.

In Texas, "naturally occurring" conditions per se do not constitute unreasonably dangerous conditions. *See, e.g., M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675–76 (Tex. 2004) (mud); *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 160–61 (Tex. 1992) (mud); *Eubanks v. Pappas Rest., Inc.*, 212 S.W.3d 838, 840–41 (Tex. App.—Houston [1st Dist.] 2006) ("slimy" mud). For instance, the accumulation of mud on a man-made sidewalk is not considered an unreasonable risk of harm because it involves "nothing more than dirt in its natural state." *M.O. Dental Lab*, 139 S.W.3d at 676. Texas courts have reasoned that any rule otherwise would make landowners strictly liable for injuries resulting from elements beyond their control. *See id.* at 676. By analogy to those cases, the district court reasoned

that "[t]he same rule likewise applies to 'slime' or a 'slimy mud,' which are also naturally occurring."

The crux of the Texas courts' holdings in ruling that mud does not present an unreasonably dangerous condition is that "rain is beyond the control of landowners." *M.O. Dental Lab*, 139 S.W.3d at 675–76. Therefore "[h]olding a landowner responsible for naturally accumulating mud *that remains in its natural state* would be a heavy burden[.]" *Id.* at 676 (emphasis added). Thus, "[o]rdinary mud that accumulates naturally on an outdoor concrete slab *without the assistance or involvement of unnatural contact* is, in normal circumstances, nothing more than dirt in its natural state and, therefore, is not a condition posing an unreasonable risk of harm." *Id.* (emphasis added). But O'Connor testified that he slipped on "water and/or mud and/or slimy green algae," and submitted an expert report analyzing photographs of the area which determined that the slippery, slimy substance on the sidewalk was indeed green algae. Taking this testimony in the light most favorable to O'Connor, he has at least created a material issue of fact as to whether the substance on which he slipped was "ordinary mud[.]" *M.O. Dental Lab*, 139 S.W.3d at 676.

More importantly, O'Connor has raised a genuine question of fact as to whether the algae was "naturally accumulating" or "in its natural state." *Id.* If it wasn't, then *M.O. Dental Lab*'s "heavy burden" in favor of the landowner doesn't apply. *Id.* Wal-Mart argues that O'Connor "did not cite a single piece of evidence . . . establishing that the slime was unnatural in origin," but this is plainly untrue. O'Connor presented deposition testimony from Jesse Hale, the manager of the LaMarque, Texas Wal-Mart store, who affirmed that "as the manager of th[e] store, [he] underst[ood] that the water from the garden center drains out of the garden center onto the sidewalk [where O'Connor fell], down into the drainage area into the parking lot[.]" In addition, photographs show that a raised area between the sidewalk and the parking lot prevents water from fully draining into the parking lot, causing

it to pool on the sidewalk. This at minimum creates an issue of material fact as to whether "the assistance or involvement of unnatural contact" attributable to Wal-Mart caused the accumulation of algae on the sidewalk where O'Connor slipped. *Id.* at 675–76. A reasonable jury, reviewing this evidence, and drawing all inferences in favor of the nonmoving party, could find that this algae growth was unnatural—caused by Wal-Mart allowing water to drain onto the sidewalk, pool there, and stand long enough for algae growth to form. *See Int'l Shortstop*, 939 F.2d at 1263. The district court thus erred in granting summary judgment in favor of Wal-Mart on O'Connor's premises liability claim.

## B.

Wal-Mart urges this court to affirm the grant of summary judgment on the alternative ground, unexamined by the district court, that O'Connor failed to create a genuine issue of material fact as to whether Wal-Mart had actual or constructive notice of the algae slime—another requirement for pleading a premises liability claim under Texas law. *See Gonzalez*, 968 S.W.2d at 936. Wal-Mart argues that O'Connor offered no evidence of such actual or constructive notice. But a reasonable fact finder could decide otherwise.

Knowledge of a dangerous condition may be inferred from the persistence of that condition. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex. 1992) (citing *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539 (Tex. 1976)). What constitutes a reasonable time for discovery of a condition is highly fact-dependent. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002). To prove constructive notice, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.* at 816. In determining whether a premises owner had constructive knowledge, a court may consider the combination of (1) the length of the time the hazard existed, (2) the proximity of employees to the

hazard, and (3) the conspicuousness of the hazard. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006) (referring to "analyzing the combination of proximity, conspicuity, and longevity" when determining constructive notice). "[M]ere proximity of an employee to a spill, without evidence of when or how it came to be on the floor, [is] legally insufficient to charge a premises owner with constructive notice of the hazard." *Id.* at 567 (citing *Reece*, 81 S.W.3d at 816–87). Evidence of the changed condition of a substance, however, may be sufficient on its own to show that the substance existed for long enough to result in constructive knowledge by the premises owner. *See Kofahl v. Randall's Food & Drugs, Inc.*, 151 S.W.3d 679, 681 (Tex. App. 2004); *Kroger Stores, Inc. v. Hernandez*, 549 S.W.2d 16, 16–17 (Tex. Civ. App. 1977); *Furr's, Inc. v. Bolton*, 333 S.W.2d 688, 689–690 (Tex. Civ. App. 1960).

Here, O'Connor's expert analyzed photographs taken both at the time of O'Connor's fall and nearly two years later, and found them to show green algae staining on the concrete as well as water retention in that area. O'Connor also introduced deposition testimony that the store manager was aware that "water from the garden center drains out of the garden center onto the sidewalk." Wal-Mart argues that this does not establish that the algae on which O'Connor slipped had been growing on the sidewalk for long enough to justify a finding that Wal-Mart had constructive notice; but, as O'Connor's expert attested, "it takes many days of continuous moisture . . . for significant levels of algae to accumulate." Therefore, taking this evidence in the light most favorable to O'Connor, the store manager was aware that water from the garden center was draining out onto the sidewalk, and because the green algae in question results from accumulation of the water over the course of several days, a jury could reasonably conclude that the store manager had constructive knowledge of the dangerous condition. Accordingly, O'Connor has created a genuine issue of material fact as to whether Wal-Mart had constructive notice of the potentially unnatural

dangerous condition. We decline to uphold the district court's grant of summary judgment to Wal-Mart on this alternate ground.

## IV.

For the foregoing reasons, we REVERSE the district court's summary judgment dismissal of O'Connor's premises liability claim and REMAND for further proceedings consistent with this opinion.